Opinion issued December 12, 2024



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-23-00379-CR

_____

**DESHAUN TAMIEN  PHILLIPS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 21-CR-4182**

---

### MEMORANDUM OPINION

A jury found appellant Deshaun Tamien Phillips guilty of aggravated sexual assault. After finding two enhancement paragraphs true, the jury assessed appellant's punishment at sixty years' confinement. In one point of error, appellant contends that the trial court erred in refusing to allow defense counsel to inquire about the

complainant's history of problems at her apartment complex which directly impacted her credibility, and that the exclusion of that evidence was harmful to his defense. We affirm.

**Background**

Dolores Louis is the mother of the complainant, Deandria Charles. Deandria, who is forty-two years old, has bipolar disorder and schizophrenia. Dolores assists Deandria on a daily basis with her medication and "ADLs" (activities of daily living) such as cooking meals and taking care of the household, and she reminds Deandria of her appointments.

On October 7, 2021, Dolores checked on Deandria at her apartment to make sure that she had eaten and taken her medication that day. She testified that she left the apartment at about 6:00 or 7:00 p.m. that evening and returned the next day just before 12:00 noon. Dolores testified that when Deandria opened the door, she said, "I'm so glad you're here. I've been waiting for you to come."

When Dolores entered the apartment, she noticed that someone else was there. Deandria went to her bedroom and appellant came out of the bathroom. Dolores testified that appellant immediately began talking to her about housing and his job at Whataburger and told her he was waiting to receive his paycheck. Dolores testified that she told appellant he could not stay in Deandria's apartment and that the apartment complex rules prohibited anyone from being in Deandria's apartment.

2

When appellant told Dolores that he wanted to find housing, Dolores told him that he should go to the Galveston Housing Authority and that Deandria could not help him with that. Appellant left the apartment.

Dolores testified that as soon as Deandria locked the door she began crying and told Dolores, "Mother, please call the police. That man raped me." Deandria then told her "look at what he did to me," and she showed Dolores the bruises on her body and told Dolores that appellant "was on her all night." Dolores testified that she saw bruises on Deandria's face, neck, arms, and back and that she had not seen any bruises on Deandria the previous night. Dolores called the police. After the responding police officers took statements from Deandria and Dolores, Deandria was transported to the hospital for examination.

On cross-examination, Dolores testified that Deandria knew that she was not supposed to allow anyone other than a family member in her apartment because doing so violated the lease. She testified that she also told the police that Deandria was not supposed to have anyone else in her apartment because it would violate the apartment complex rules and that Deandria could get in trouble and be evicted for doing so. Dolores testified that she had previously reported other people being in Deandria's apartment who were not supposed to be there.

Deandria testified that, in October 2021, she lived in Apartment No. 235 at the Holland House Apartments in Galveston. Deandria testified that she was not

allowed to have others inside of her apartment. She met appellant for the first time outside a store near the apartment complex. Deandria testified that appellant came to her apartment once before October 7 but nothing happened on that occasion. She stated that when appellant came to her apartment the second time, he shoved his way inside and grabbed her by the neck. Deandria testified that appellant seemed angry and told her he was going to kill her, and that he was not happy because "they should have [given him] some money." Appellant pushed her into the bedroom where she fell. Deandria testified that appellant grabbed her by the legs and attempted to pull her into the bathroom. Deandria told him, "[s]top, please. Stop pulling me." Appellant picked her up and put her on the bed, where he took off her pajama bottoms. Appellant began choking her and repeatedly said, "Girl, I'm going to kill you." Appellant touched Deandria on the inside of her vagina with his fingers and then penetrated her with his penis. Deandria testified that she told appellant to stop multiple times and that she never consented to have sex with him. She testified that appellant had his hands around her throat most of the time, for about six or seven hours, and that he stayed on top of her so that she could not leave. She also testified that appellant struck her in the face twice with his fist. Deandria testified that she was in fear for her life.

Deandria testified that appellant left her apartment when Dolores arrived the next morning. She testified that she had never had sex with appellant and that she

4

never told the sexual assault nurse examiner that she and appellant had previously had consensual sex. On cross-examination Deandria agreed that she told the investigating officer who arrived at her apartment that she opened the door for appellant when he knocked but that on direct examination she testified that he forcibly pushed the door open. She acknowledged that she told the officer that appellant punched her in the face eight times but that on direct examination she testified that he hit her twice. She agreed that she told officers that appellant choked her twice but that she testified he choked her more than seven times. She also agreed that she told the officer that appellant ejaculated a couple of times but later told the investigating detective that he ejaculated about twelve times.

Deandria testified that she had been smoking methamphetamine the first time that appellant came to her apartment, two days prior to the assault, but that she did not smoke on the date she was assaulted. She testified that one of the reasons she was not permitted to have anybody in her apartment was because of drug use.

Odelia Williams, Director of Public Housing at the Galveston Housing Authority, supervises the managers of the four public housing properties, including Holland House. Williams testified that Holland House is a housing facility for seniors and low-income disabled residents. The front entrance to Holland House is open from 8:00 a.m. to 5:00 p.m. and residents must use their door key fobs after 5:00 p.m. The back entrance is accessible only by using a key fob. Williams testified

that residents can also exit by several side doors and that residents sometimes prop the doors open. The Housing Authority contracts with a security company to provide security guards at Holland House and there are cameras on the property.

When asked if she ever had problems with Deandria at Holland House, Williams testified that she had typical issues with her involving lease violations but no more than usual. Williams stated that she spoke with prosecutors about the issues she had with Deandria, including drug use. When defense counsel asked Williams on cross-examination what type of issues she had with Deandria, the State objected on the grounds that it lacked relevance, concerned a specific instance or instances of misconduct, and constituted improper character witness testimony. The trial court sustained the State's objection.

Tami McCreight is a Sexual Assault Nurse Examiner (SANE) with the University of Texas Medical Branch—Galveston Emergency Department. McCreight performed Deandria's sexual assault examination. McCreight testified that Deandria's behavior during the exam was consistent with somebody with reduced cognitive abilities. She testified that Deandria had multiple scabbed areas on her face, chin, and discoloration on her lips as well as injuries to both of her hands, her arms, her wrist, her legs, her shoulder, her knees, and her back. Deandria told McCreight that appellant was mad and hit her with his fist, he put his hands in every position on every part of her body, and he tried to put something in her anus

and her vagina. McCreight's report stated that Deandria told her that she let appellant in her apartment and that she was really comfortable with him. Deandria stated that she had known appellant for a few months and that they had had consensual sex before but "not this time."

Following the close of evidence, the jury convicted appellant of aggravated sexual assault and affirmatively found that appellant used his hands as a deadly weapon. At the punishment phase, the State introduced evidence that appellant had been previously convicted of several offenses.[1]

The jury found appellant guilty of the charged offense of aggravated sexual assault and found the two enhancement paragraphs alleging obstruction or retaliation and arson true. The jury assessed appellant's punishment at sixty years' confinement. The trial court signed the final judgment on April 19, 2023. This appeal followed.

### Discussion

In his sole point of error, appellant contends that the trial court committed reversible error when it refused to allow defense counsel to question Williams, the Public Housing Director, about Deandria's history of allowing individuals into her

---

[1] Appellant was previously convicted of assault causing bodily injury, family member; criminal trespass; terroristic threat against a public servant; resisting arrest, search, or transport; resisting arrest; terroristic threat; obstruction or retaliation; and arson.

apartment and her drug use. The State responds that appellant failed to preserve error, the trial court did not commit error in excluding the evidence, and error, if any, was harmless.

## A.     Standard of Review and Applicable Law

We review a trial court's decision whether to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). We will not reverse the ruling of the trial court except where there has been a clear abuse of discretion falling outside the "zone of reasonable disagreement." *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024).

An argument that evidence should have been admitted because it was offered to attack the credibility of the complainant may involve both the Confrontation Clause and the Rules of Evidence. *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The main purpose behind the Confrontation Clause is to secure for the opposing party the opportunity of cross-examination because that is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Johnson*, 490 S.W.3d at 909 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). The Sixth Amendment right to cross-examine a witness allows a party to attack the general credibility of that witness "or to show

8

their possible bias, self-interest, or motives in testifying." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citing to *Davis*, 415 U.S. at 316). A trial court judge can abuse his or her discretion by excluding admissible evidence that is offered by the defendant to demonstrate the complainant's motive to falsely accuse him. *Johnson*, 490 S.W.3d at 909.

The right to cross-examine, however, is not unqualified. *See id*. A trial court judge may limit the scope and extent of cross-examination, so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of "an opportunity for effective cross-examination." *Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014) (internal citations omitted). The defendant is not entitled to "cross-examination that is effective in whatever way, and to whatever extent," he might wish. *Id*. Whether there has been a violation of the Confrontation Clause is determined on a case-by-case basis. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Id*.; *Castle v. State*, 748 S.W.2d 230, 233 (Tex. Crim. App. 1988) ("Generally, the scope of cross-examination is within the control of the trial court and in the exercise of its own discretion.").

**1. Analysis**

Appellant complains of the trial court's ruling that occurred during defense counsel's cross-examination of Williams:

Defense Counsel: Had you ever had any problems with [Ms. Charles] in that unit?

Williams: Not more than usual, just regular things, regular just lease violations.

Defense Counsel: Okay. Did you—did you speak to the prosecutors this morning about your testimony?

Williams: About being here?

Defense Counsel: About Ms. Charles and how you had some issues with her and drug use in that apartment.

Williams: Uh-huh. Yes.

Defense Counsel: Okay. So, yes, you talked to the State about that information?

Williams: Yes.

Defense Counsel: Okay. So what type of issues did you have with her?

Williams: Just her—

State: Your Honor, I'm going to object to any specific acts [sic] prior about conduct.

The Court: Response?

Defense Counsel: Well, Judge, I mean, they called her as a witness. It's their witness. And I think that she can talk about what issues she may have had with somebody that's—their credibility means everything to the jury.

10

The Court: Anything else?

State: Your Honor, just that I believe it's not relevant, as well it's improper character [evidence] of a witness who's already testified.

The Court: Sustained.

Appellant argues that the trial court erred by sustaining the State's objection and that the improper ruling denied him the right to effectively cross-examine Williams about Deandria's motive to lie and the consequences she faced for her repeated rule violations. In doing, so, he argues, the trial court prevented him from fully attacking her credibility in violation of his rights under the Confrontation Clause.

## 2. Preservation of Error

The State argues that appellant has failed to preserve his argument based on the Confrontation Clause.

To preserve a complaint for appellate review, there must be a timely, specific objection and a ruling by the trial court. TEX. R. APP. P. 33.1(a). "To be timely, a complaint must be made as soon as the grounds for complaint [are] apparent or should be apparent." *Ex parte Nuncio*, 662 S.W.3d 903, 914 (Tex. Crim. App. 2022) (quoting *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999)). To be sufficiently specific, an objection need not employ "hyper-technical or formalistic . . . words or phrases[.]" *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018) (internal citations omitted). Instead, to avoid forfeiting a complaint on appeal,

the party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). "This gives the trial judge and the opposing party an opportunity to correct the error." *Id.* (citing *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005)). Accordingly, a "general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for the objection is *obvious* to the court and to opposing counsel." *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). "Usually, for a complaint to be obvious," there will "have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

In *Reyna v. State*, the Court of Criminal Appeals noted that a defendant's argument that the purpose of admitting evidence is to attack the victim's credibility can refer to either the Texas Rules of Evidence or the Confrontation Clause. *See Reyna*, 168 S.W.3d at 179. In such case, it is incumbent on the proponent of the evidence to inform the trial court why the evidence is admissible; it is not enough to tell the judge that evidence is admissible. *See id.* at 177. The Court in *Reyna* concluded that because the defendant "'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence, the trial judge 'never

12

had the opportunity to rule upon' this rationale." *Id*. at 179. So too here. At trial, the only reason appellant offered for the admission of Williams's testimony was that it went to the complainant's credibility. There is nothing in the record showing that appellant properly put the trial judge on notice that he was making a Confrontation Clause argument in support of admitting the excluded evidence. *Golliday*, 560 S.W.3d at 670 ("Parties are not permitted to 'bootstrap a constitutional issue from the most innocuous trial objection,' and trial courts must be presented with and have the chance to rule on the specific constitutional basis for admission because it can have such heavy implications on appeal.").

Further, there is nothing in the exchange related to defense counsel's objection that suggests it was obvious to the court and to the prosecutor that appellant was raising a complaint about the exclusion of the evidence on Confrontation Clause grounds or another constitutional basis. *See Buchanan*, 207 S.W.3d at 775; *Clark*, 365 S.W.3d at 339 (noting for complaint to be obvious, there will have been statements or actions clearly indicating what judge and opposing counsel understood by arguments). In response to defense counsel's objection, the prosecutor argued that the evidence would constitute a specific instance or instances of misconduct, lacked relevance, and the witness was an improper character witness, indicating that the State understood the line of questioning to be an attempt to impeach Deandria. This response does not demonstrate that the court and the prosecutor understood

appellant to be objecting on Confrontation Clause grounds. *See Buchanan*, 207 S.W.3d at 775. Having failed to make a constitutional argument during trial, appellant is precluded from raising it on appeal. *See* TEX. R. APP. P. 33.1(a); *Golliday*, 560 S.W.3d at 671 ("Appellant did not clearly articulate a constitutional basis supporting the admission of the excluded evidence at trial. Consequently, he did not preserve a constitutional claim for appeal."); *Reyna*, 168 S.W.3d at 179; *see also Hamilton v. State*, No. 01-21-00587-CR, 2023 WL 3099909, at *13 (Tex. App.—Houston [1st Dist.] Apr. 27, 2023, pet. ref'd) (mem. op., not designated for publication) (concluding defendant waived constitutional arguments because he failed to "clearly articulate" to trial court that Confrontation Clause or any other constitutional provision "demanded admission of the evidence" he sought to admit).

### 3. No Error

However, even if appellant had preserved his Confrontation Clause argument, the record does not support his argument that he was denied the right to fully cross-examine Williams to develop Deandria's motive to lie about how and why appellant was at her apartment. Appellant sought to question Williams about Deandria's previous violations of the housing rules and the potential consequences of those violations. As appellant concedes in his brief, the jury heard evidence that Deandria had previously engaged in drug use and had unauthorized visitors in her apartment. Dolores testified that she told appellant he could not stay in Deandria's apartment

and that the apartment complex rules prohibited anyone from being in Deandria's apartment. On cross-examination, Dolores testified that Deandria knew that she was not supposed to allow anyone other than a family member in her apartment because the lease says so. She stated that she had previously reported other people in Deandria's apartment who were not supposed to be there. Dolores testified that she also told the police that Deandria was not supposed to have anyone else in her apartment and that she could be evicted for violating the housing rules. The jury also heard Deandria's admission that she was not allowed to have others in her apartment and that one of the reasons for this was her drug use. Deandria testified that appellant had been in her apartment prior to the date of the assault, and that she had smoked methamphetamine the first time he came to her apartment.

Defense counsel had the opportunity to cross-examine Dolores and Deandria about Deandria's history of allowing individuals into her apartment and her drug use to support the defensive theory that Deandria had a motive to lie about appellant's presence in her apartment. The excluded testimony would merely have been cumulative and repetitive of the evidence of Deandria's drug use and unauthorized visitors already before the jury, and the trial court was within its discretion to exclude it. *See Lopez*, 18 S.W.3d at 222 (stating trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid, among other things, injection of cumulative evidence); *Castle*, 748 S.W.2d at 233 ("Generally, the scope

15

of cross-examination is within the control of the trial court and in the exercise of its own discretion."); *see also Johnson*, 433 S.W.3d at 552 (noting defendant is not entitled to "cross-examination that is effective in whatever way, and to whatever extent," he might wish). On this record, we conclude that appellant was not denied the right to a full cross-examination to attack Deandria's credibility in violation of the Confrontation Clause. The trial court did not abuse its discretion in excluding the complained-of testimony. We overrule appellant's sole point of error.

## Conclusion

We affirm the trial court's judgment.

Amparo Monique Guerra
Justice

Panel consists of Justices Goodman, Guerra, and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).